Caroline A. Slemmons' Estate. Appeal of Frank D. Hartman, Voluntary Assignee of John O. Slemmons.

*Will—Trusts and trustees—Income—Precatory words.*

Testatrix gave her estate in trust to be equally divided among her children. The trust was then directed to be managed as the trustee shall "consider most" to their "advantage," and when all shall have attained twenty-one years, distribution was to be made to them with all convenient speed of the proceeds of the "entire estate" so that the "objects of my bounty may then have each of them their entire control of their several separate estate." She then excepted from the operation of the trust the income of both real and personal estate, and directed that it should be paid to her husband until all her children were of age "said income to be disposed of by my husband at his own discretion, with the hope and belief, however, that he will use the same in such a manner as will be advantageous to our children." She also directed that the trustees should permit her husband and children to live in her "family residence" if her husband so desired until all the children were of age. *Held*, that the husband had no such beneficial interest in the income as would pass to his assignee under an assignment for the benefit of creditors.

Argued March 6, 1895. Appeal, No. 246, Oct. T., 1895, by Frank D. Hartman, voluntary assignee of John O. Slemmons, from decree of O. C. Allegheny Co., Feb. T., 1894, No. 168, dismissing petition for account. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Petition by Frank D. Hartman, assignee of John O. Slemmons for benefit of creditors, praying for a citation to The Safe Deposit & Trust Company, executor of Caroline A. Slemmons, the late wife of John O. Slemmons, requiring it to exhibit an account of the moneys that had come into its hands since the time of the voluntary assignment, the purpose being to subject the part of the decedent's estate alleged to belong to John O. Slemmons to the claims of his creditors.

The will was as follows:

Item 1st. I give and bequeath to my husband John O. Slemmons, the sum of one thousand dollars, being money heretofore advanced by me to him to make use of in his business and for which sum I hold his note dated June 22d, 1882, payable to the order of Wm. A. Holman, and by said Holman assigned to me.

Item 2d.   All the residue of my property, real, personal and mixed, I give, devise and bequeath to my executor, hereinafter named, in trust, to be equally divided among my children, share and share alike, said property to be held by my executor so long and in such manner, and to be disposed of at such times and in such manner, as I shall hereinafter direct:

And except as hereinafter expressly restricted and limited by me, I hereby confer upon my said executor full power as to the management and control of the property or estate hereinbefore to it intrusted: and 1st, my said executor is to have power to invest any and all moneys to the said trust estate at any time belonging, in stocks, bonds or other good securities at its discretion, and also to change any investment made, and to sell any portion or all of the personal property to said trust estate at any time belonging, whenever my said executor shall deem it advantageous to my children so to do, that is, to make such change of investment or such sale.

But I hereby expressly except from the operation of the aforesaid power over my personal estate given to my executor, all my furniture and household effects, and I direct my executor to allow to my husband and my children the free use and disposal of the same until all my children shall arrive at the age of twenty-one years, if my husband so wishes it; when, or at any time prior should my husband so elect, said furniture and household effects shall be sold and the proceeds disposed of in the same manner as other personal property in the hands of my executor:

And I also expressly except from the operation of the aforesaid power over my personal estate given to my executor the entire income of the same, and I hereby direct my executor to pay over all of said income yearly arising from my personal estate to my husband, on the first day of January and the first day of July of each and every year after my death until all of my children shall have arrived at the age of twenty-one years, said income to be disposed of by my husband at his own discretion, with the hope and belief, however, that he will use the same in such a manner as will be advantageous to our children.

2d.  My said executor is to have full power, except as I may hereinafter expressly restrict and limit such power, to rent, repair, care for and sell either at public or private sale, any real

estate to the aforesaid trust estate at any time belonging, and to this end to execute good and sufficient transfers and conveyances for any such real estate as may be sold hereunder at any time, and the proceeds of such realty my said executor shall have full power to invest and to change any investment thereof at its discretion, and as it shall consider most to the advantage of my children.

But I hereby expressly except from the operation of the aforesaid power given to my executor over my real estate the family residence or customary home of myself and family of which I may die seized, and I direct that my executor shall allow to my husband and my children the free use, occupation and enjoyment of such family residence, provided my husband so wishes it, until all my children shall arrive at age of twenty-one years, when, and prior to such time, in case my husband thinks it unwise to occupy same, said family residence shall be disposed of by my executor according to the terms of the power to it hereinbefore granted; and I also expressly except from the operation of the aforesaid power over my real estate given to my executor, the entire income of the same, and I hereby direct my executor to pay over all of said income yearly arising and accruing out of my real estate to my husband on the first day of January and the first day of July of each year after my death, until all my children shall have arrived at the age of twenty-one years; said income is to be disposed of by my husband at his own discretion, with the hope and belief, however, that he will use the same in such a manner as will be advantageous to our children.

Item 3d. When all of my children shall have attained the age of twenty-one years, until which time no part of my estate is to be distributed among the objects of my bounty except the income as hereinbefore provided, I direct my executor to dispose of any real estate that may then remain unsold as soon as possible without serious loss, and to turn over with all convenient speed the proceeds of my entire estate, real, personal and mixed, held by my said executor in trust aforesaid to such of my children as may then be living, and to the legal representatives of any of my children who may have died after my decease or prior my decease, so that my intentions hereinbefore expressed that my children all share equally in my estate be fully carried out at the time specified, and the objects of my bounty may then have each of them entire control of their several separate estates.

Item 4th. I hereby appoint "The Safe Deposit Company" of Pittsburgh, executor of this my last will and testament.

HAWKINS, P. J., filed the following opinion:

While it is true that the net income of the trust estate is directed to be disposed of in the discretion of testatrix's husband, it is plain from the whole will that her children were the intended objects of her bounty and he but the trustee. The estate is in the first instance given in trust to be equally divided "among her children," the trust is then directed to be managed as the trustee shall "consider most" to their "advantage," and when all shall have attained twenty-one years, distribution to be made to them with all convenient speed of the proceeds of the "entire estate," "so that my intentions hereinbefore expressed that my children all share equally . . . . be fully carried out . . . . and the objects of my bounty may then have each of them entire control of their several separate estate." The gift being expressly to them and the management of the trust for their "advantage" alone, the inference is that they were intended to have the benefit of the whole. A gift of the corpus is a gift of the income. True, the disposition of the income is intrusted to the discretion of the father; but this followed the express gift of the whole residuary estate to the "children," and was coupled "with the hope and belief, however, that he will use the same in such manner as will be advantageous" to them, and was limited in duration to their minority. The mere direction that the income should be "paid" to the father and used in his discretion, was not intended to cut down their beneficial estate, but related simply to the manner of use by the children. The testatrix had already made in express words, and independently, provision for him, and if she had intended to give him any beneficial interest in this, would doubtless have said so. The express gift to the children alone, excludes any implication of an intent to vest a beneficial interest in him. The manifest purpose was to give him as head of the family control of the income, so that he might use it in his discretion as he might deem "advantageous" to the children until the youngest should attain majority. No beneficial interest was given him or intended to be given him.

But concede that a beneficial interest was given Mr. Slemmons, was it such as could pass under a voluntary assignment?

The children are expressely given a right of residence with their father, and impliedly a right of maintenance in the mansion house.   Can any one take the place of the father as the head of the family, or in determining the amount of " income " that may be used to the " advantage " of the children, or when the mansion shall be sold ?   To ask these questions is to answer them in the negative.   These are matters of personal trust as to which there can plainly be no substitution.

Concede even that the bequest of income is to the husband with but a precatory trust in favor of the children, would it pass without specific mention in the assignment ?   The father would in that event be under a moral obligation which he might repudiate, but should he be presumed to have violated his wife's trust and disappointed her " children's " just expectations in the interest of his individual creditors ?   Is there not as much reason to declare this a question of personal privilege as the plea of usury, coverture, statute of frauds and the like, of which creditors can take no advantage ?   What equity have the creditors ?   Their demand involves at least a breach of moral duty on the part of their debtor and injury to " children " for whose " advantage " the testatrix expressed her " hope and belief " the income should be used, and ought not in equity and good conscience to be made nor allowed : Shay v. Sessaman, 10 Pa. 432.

And now, to wit, July 14, 1894, this matter came on to be heard at this term upon petition and answer, and was argued by counsel and thereupon, upon consideration thereof, it is ordered, adjudged and decreed that said petition be dismissed at the cost of petitioner.

*Error assigned* was above decree.

J. M. *Stoner*, E. T. *Cassidy* and O. S. *Richardson* with him, for appellant.—The question in expounding a will is not what the testator meant, but what is the meaning of his words : Weidman's App., 42 Leg. Int. 338 ; Hancock's App., 112 Pa. 532.

So far from being a mere trustee, as announced by the court below, the husband is the first taker : McFarland's App., 37 Pa. 300 ; Wilson v. McKeehan, 53 Pa. 79 ; Rewalt v. Ulrich, 23 Pa. 388 ; Smith's App., 23 Pa. 9.

A considerable fund was expected to be in the hands of the trustee intended ultimately for the benefit of the children. This might be impaired or wasted by inconsiderate investments. The children, therefore, had the most at stake; and it was natural that the trustee should be directed to make and change investments " at its discretion and as it shall consider most to the advantage " of the children. Such a direction does not warrant the assumption that the children were the sole objects of the bounty of the testatrix: Paisley's App., 70 Pa. 153.

Nor is the assumption that the children were the sole objects of the bounty of testatrix helped by the precatory words addressed to the husband "with the hope and belief, however, that he will use the same in such a manner as will be advantageous to her children:" Pennock's App., 20 Pa. 268; Bowlby v. Thunder, 105 Pa. 173; Boyle v. Boyle, 152 Pa. 108.

Every interest owned by a debtor, whether vested or contingent, may be the subject of assignment for the benefit of creditors, unless the instrument creating it contains a valid restraint upon his power of alienation: Wickersham's App., 18 W. N. C. 36; Churchman's App., 18 Phila. 228; Barker's Est., 159 Pa. 518; Power's App., 63 Pa. 443; Kuhn's Est., 163 Pa. 438; Vaux v. Parke, 7 W. & S. 19; Trust Co. v. Chambers, 46 Pa. 485; Keyser v. Mitchell, 67 Pa. 473; Grothe's App., 135 Pa. 585; De Silver's Est., 142 Pa. 74.

*H. A. Miller*, for appellee, was not heard.

PER CURIAM, January 6, 1896:

The decree in this case is affirmed on the opinion of the learned court below.